Commonwealth *v.* Marlin, Appellant.

Argued January 12, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Robert S. Glass,* with him *Glass and Glass,* for appellant.

*John Woodcock, Jr.,* Assistant District Attorney, with him *Amos Davis,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, May 23, 1973:

Appellant, George Marlin, was charged in 1969 in separate bills of indictment with a series of offenses arising out of certain related events. On the first set of charges—assault and battery, assault and battery with intent to ravish, and rape—the trial judge directed

the jury to return verdicts of not guilty. On charges of fornication and furnishing liquor and brewed beverages to a minor, the jury returned verdicts of not guilty. Appellant was, however, found guilty of corrupting the morals of a minor by contributing to her delinquency. Act of June 2, 1933, P. L. 1433, §20, 11 P.S. §262.

Following denial of post-trial motions appellant appealed to the Superior Court which affirmed in a per curiam opinionless order. *Commonwealth v. Marlin,* 220 Pa. Superior Ct. 374, 286 A. 2d 392 (1971) (HOFFMAN, J., dissenting, joined by SPAULDING, J.). We granted allocatur and now affirm.

Appellant raises five issues for our consideration, three of which will not be discussed because appellant failed to raise objections at the proper time.[1] " 'A party may not remain silent and take chances on a verdict and afterwards complain of matters which, if erroneous, the Court would have corrected: Commonwealth v. Razmus, 210 Pa. 609.' " *Commonwealth v. Gockley,* 411 Pa. 437, 455, 192 A. 2d 693, 702 (1963).

Appellant first contends that before he can be convicted of corrupting the morals of a minor by contributing to her delinquency, under Section 262 of the Juvenile Court Code, the child involved must have been adjudicated delinquent by the juvenile court. See Act of June 2, 1933, P. L. 1433, §20, 11 P.S. §262; *Commonwealth v. Stroik,* 175 Pa. Superior Ct. 10, 15, 102 A. 2d

---

[1] The issues which appellant failed to object to are:

(1) that the indictment was illegally amended from a charge of corrupting the morals of a minor (Act of June 24, 1939, P. L. 872, §532, as amended, 18 P.S. §4532) to corrupting the morals of a minor by contributing to her delinquency (Act of June 2, 1933, P. L. 1433, §20, 11 P.S. §262) ;

(2) that the court's charge to the jury was prejudicial. See Pa. R. Crim. P. 1119; and

(3) that appellant was denied a fair trial because the prosecutor continually asked leading questions of the witnesses.

239, 241 (1954). Because no evidence was adduced that the child in question—a thirteen year old girl—was, in fact, adjudicated delinquent, appellant claims that his conviction cannot stand.

Appellant argues that the court merely assumed the child was delinquent. However, the statute does not require the child be adjudicated "delinquent," but that the child be "any child to whom the jurisdiction of any juvenile court within this Commonwealth has attached." Act of June 2, 1933, P. L. 1433, §20, 11 P.S. §262.[2] The record provides ample, uncontradicted evidence that the child was under the jurisdiction of the juvenile court in March of 1969, at the time the offense was committed. A Mr. Sanders, Director of Child Welfare for Blair County, testified that in March of 1969 the child was a ward of the Child Welfare Agency. Other uncontradicted testimony was also presented establishing that the child was at that time a ward of the juvenile court. See Act of May 16, 1921, P. L. 666, §1, as amended, 11 P.S. §271. Appellant's contention on this challenge is without merit.

Appellant's principal argument is that the evidence presented at trial was insufficient to convict him of the offense of contributing to the delinquency of a minor. He contends that because he was acquitted of five of the six offenses charged, the credibility of the complaining witness—the thirteen year old girl—was "completely destroyed." Therefore, appellant argues, no conclusion is possible other than that he should have also been acquitted of this sixth charge. Appellant's

---

[2] A child need not be adjudicated "delinquent" before the jurisdiction of the juvenile court attaches. Section 244 of The Juvenile Court Code provides, in pertinent part, that juvenile courts ". . . shall have and possess full and exclusive jurisdiction in (a) all proceedings affecting *delinquent, neglected* and *dependent* children; . . ." Act of June 2, 1933, P. L. 1433, §2, as amended, 11 P.S. §244 (emphasis added).

conclusion, however, is not the logical imperative he deems it to be.

The trier of fact has the "authority to believe all, part of, or none of a witness' testimony." *Commonwealth v. Karchella,* 449 Pa. 270, 273, 296 A. 2d 732, 733 (1972); *Commonwealth v. Harris,* 444 Pa. 515, 281 A. 2d 879 (1971); *Commonwealth v. Hornberger,* 441 Pa. 57, 270 A. 2d 195 (1970); *Commonwealth v. Kirkland,* 413 Pa. 48, 195 A. 2d 338 (1963). The child testified she ran away from the Blair County Child Welfare Center, where she had been committed by the juvenile court, and for several days lived in a trailer with several men, one of whom was the appellant. She further testified that appellant and others had sexual relations with her and served her beer. Appellant denied most of the young girl's testimony. However, he did acknowledge that the child remained at the trailer overnight and that he made no effort to get her to leave or to inform the proper authorities when they came to the trailer looking for her. Other witnesses also testified that the child did stay at the trailer overnight. The jury may have disbelieved the young girl's story regarding the beer and the sexual relations, but was convinced that the girl had stayed overnight at the trailer. Such a conclusion is, of course, within the jury province as the trier of fact.

This record contains sufficient evidence to support the jury's finding that appellant knew where the child was, knew she had run away, allowed her to stay overnight at the trailer and failed to disclose her whereabouts to the police or juvenile authorities—who questioned him when they came looking for her. The *real question* here is whether such action, or inaction on behalf of appellant, with knowledge that the child, a ward of the juvenile court, had run away, is conduct sufficient to convict appellant of the offense charged.

The statute provides: "Any person who contributes to the delinquency of any child to whom the jurisdiction of any juvenile court within this Commonwealth has attached, or shall hereafter attach, or who knowingly assists or encourages such child in violating his or her parole or any order of the said court, shall be guilty of a misdemeanor, and, upon conviction, shall be sentenced to pay a fine of not more than five hundred dollars, or to undergo imprisonment for a term not exceeding three years, or both, at the discretion of the court." Act of June 2, 1933, P. L. 1433, §20, 11 P.S. §262.

In *Commonwealth v. Stroik*, supra at 15, 102 A. 2d at 241, the Superior Court stated: " 'Contributing to delinquency' is . . . a broad term involving conduct toward a child in *an unlimited variety of ways which tends to produce or to encourage or to continue conduct* of the child which would amount to delinquent conduct." (Emphasis added.) The *Stroik* court further noted: ". . . contributing to delinquency may be by either acts or omissions. People v. Calkins, 119 P. 2d 142, 144 (Cal. 1941)."

It thus appears that by failing to inform the juvenile authorities, after inquiry, of the young girl's activities and whereabouts appellant thereby engaged in a course of conduct which tended to "encourage or to continue" the delinquent conduct of the child. However, the dissenters in the Superior Court in this case believe that the *Stroik* court made it ". . . clear that the mere failure of the appellant to report a minor who [sic] he knew was a runaway truant was not sufficient to warrant the appellant's conviction. [The Superior Court] only affirmed that conviction after first listing various affirmative acts performed by the appellant which promoted the delinquency of the minor. We held that such acts 'if not separately, at least taken togeth-

er, represents conduct toward these children which undoubtedly contributed to their delinquency.' 175 Pa. Superior Ct. at 16, 102 A. 2d at 242." *Commonwealth v. Marlin*, supra at 377, 286 A. 2d at 393. The dissenters there concluded that ". . . no duty is imposed upon a person who learns of a minor's delinquency to report the minor to the proper authorities." Id.

While the Superior Court dissenters may have been incorrect in their interpretation of *Stroik*[3] we are not here presented with that question of whether a "duty is imposed upon a person who learns of a minor's delinquency to report the minor to the proper authorities." The record clearly establishes more than just the mere failure to report a minor's delinquency to the authorities. The question here is whether appellant's actions, in view of his previously recited conduct, and his refusal to disclose to the authorities the whereabouts of the child, when specifically asked to do so, constituted a violation of the statute.

In resolving this question we note that the purpose of juvenile statutes, as the one at issue here, is basically protective in nature. Consequently these statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be circumscribed, these statutes are necessarily drawn broadly. It clearly would be impossible to enumerate

---

[3] A careful reading of *Stroik* reveals that the Superior Court did not hold that the mere failure of a person to report a minor whom he knew to be a runaway truant was, by itself, insufficient to warrant a conviction. The Superior Court in *Stroik* never had to reach this question, because the court was presented with a record establishing *additional acts* by the defendant, which, together, clearly contributed to the minor's delinquency. What the Superior Court said in *Stroik* was that *perhaps* each of the acts in question, individually, *might not* have been sufficient to constitute a violation of the statute.

every particular type of adult conduct against which society wants its children protected. We have therefore, sanctioned statutes pertaining to juveniles which proscribe conduct producing or tending to produce a *certain defined result* (juvenile delinquency) rather than itemizing every undesirable type of conduct.

As the Superior Court stated: "The validity of statutes making it a crime to contribute to the delinquency of minors has been upheld in our own State and other jurisdictions: Com. v. Jordan, 136 Pa. Superior Ct. 242, 7 A. 2d 523; Com. v. Wink, 170 Pa. Superior Ct. 96, 84 A. 2d 398; Com. v. Stroik, 175 Pa. Superior Ct. 10, 102 A. 2d 239; People v. Friedrich, 52 N.E. 2d 120 (Ill.); State v. Montalbo, 110 A. 2d 572 (N.J.); State v. Roessler, 266 P. 2d 351 (N.M.)." *Commonwealth v. Randall*, 183 Pa. Superior Ct. 603, 613, 133 A. 2d 276, 280 (1957).

In *Randall* the Superior Court, upholding the broad purposes of one of our own juvenile statutes, noted:

"The common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it.

"It is obvious that the mandates of the statute are salutary measures designed to protect children. 'The ways and means by which the venal mind may corrupt and debauch the youth of our land, both male and female, are so multitudinous that to compel a complete enumeration in any statute designed for protection of the young before giving it validity would be to confess the inability of modern society to cope with the problem of juvenile delinquency.' State v. McKinley, 202 P. 2d 964, 967, 53 N.M. 106; State v. Harris, 141 S.E. 637, 105 W. Va. 165." *Randall*, supra at 611-12, 133 A. 2d at 280.

Appellant here indulged in a deliberate course of conduct by permitting the child, whom he knew had run away, to remain at the trailer overnight, and by failing to reveal her activities, upon request, to the juvenile authorities. Such conduct, which clearly may encourage and contribute to the child's delinquency, is definitely within the broad scope of the protective nature of the statute. Appellant's course of conduct, then, was sufficient to constitute a violation of that statute. As a California court once said: "The purpose of the juvenile law . . . is to protect the youth of our state from those evil and designing persons who would lead them astray, and we are not disposed to in any way impair its usefulness by giving any narrow or strained construction to any of its plain and obvious provisions." *People v. Cohen*, 62 Cal. App. 521, 526, 217 P. 78, 80 (1923).

We, too, are unwilling to impair or diminish the social usefulness of the protective and preventive objectives of our juvenile statutes by unnecessarily rigid constructions, which tend to frustrate or defeat their plain statutory intent—safeguarding those children under the jurisdiction of the juvenile court.

Order affirmed.

Mr. Justice MANDERINO dissents.